SEALED

ORIGINAL

_____ FILED     _____ ENTERED
_____ LODGED   _____ RECEIVED

OCT 08 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA ex *rel.* DANIEL FOSTER, <br><br> Plaintiff, <br><br> v. <br><br> ROCHESTER FARMS, LLC, a Washington Limited Liability Company <br><br> Defendant. | NO. 3:25-cv-05910-BHS <br><br> COMPLAINT AND JURY DEMAND <br><br> **Filed Under Seal** <br> pursuant to <br> 31 U.S.C. § 3730(b)(2) |

## NATURE OF THE ALLEGATIONS

1.     Relator brings this action on behalf of himself and the United States of America against Defendant for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2.     This action seeks to recover funds that were loaned to Defendant through the federal Government's Paycheck Protection Program ("PPP") and forgiven as a result of false applications.

3.     Defendant and any associated companies grow and sell marijuana. That is, they manufacture THC, which is a Schedule I drug.

4.     Defendant Rochester Farms took out a first draw PPP loan for $191,600 even though it is in an industry which is illegal under federal law, making it ineligible for CARES Act PPP loans. It later sought and obtained forgiveness.

**COMPLAINT AND JURY DEMAND - 1**

**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

5.    Cannabis producers such as Defendant generally experienced increased sales during the pandemic and, in line with SBA guidance, most did not apply for PPP loans. Defendant, however, disregarded this guidance and took funds anyway—securing an unfair advantage over competitors and diverting relief money from industries in genuine need. Ultimately, other Washington small businesses were harmed as a result.

6.    Relator is the founder of a legal technology company specializing in intellectual property theft detection and management. In that role, he has gained extensive experience in digital investigations, evidence gathering, and corporate fraud. He also holds a certificate in forensic accounting and fraud examination as well as a specialization certificate in digital forensics.

7.    Relator used his digital investigative experience to identify the fraud described herein.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

9.    Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as Defendant(s) transact business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## PARTIES

10.    Relator Daniel Foster is an American citizen living in Germany.

11.    Defendant Rochester Farms, LLC ("Rochester Farms"), is a Washington limited liability company, registered with the secretary of state as having a principal office at 10011 173rd Avenue Southwest, Rochester, Washington.

## THE PAYCHECK PROTECTION PROGRAM

12.    During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small

COMPLAINT AND JURY DEMAND - 2

Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

13.    Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

14.    The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

15.    Lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the following amounts for first draw loans:

- Five (5) percent for loans of not more than $350,000;
- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.

16.    For second-draw loans, lender processing fees were as follows:

- Fifty (50) percent or $2,500, whichever is less, for loans of not more than $50,000;
- Five (5) percent for loans of more than $50,000 and not more than $350,000; and
- Three (3) percent for loans above $350,000.

See https://home.treasury.gov/system/files/136/Updated-Guidance-PPP-Lender-Processing-Fee-Payment-1502-Reporting-Process.pdf

17.    Borrowers were later able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities during either the 8- or 24-week period after disbursement.

**COMPLAINT AND JURY DEMAND - 3**

**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

## FACTUAL ALLEGATIONS

18. Rochester Farms is a producer and processor of marijuana located in Rochester, Washington.

19. Rochester Farms has held licenses for these activities since 2014. Its registered trade names include, but are not limited to "Kronik Cannabis," "Reign Cannabis," and "Vivid Cannabis."

20. An archived version of its website, rochesterfarms.com, dated February 10, 2020, describes Rochester Farms as a "state of the art grow facility in Washington" selling products across the state.



The Farm

Welcome to the most state of the art grow facility in Washington. Our building was designed and engineered to accomplish one goal: produce an affordable, consistently high quality product! Plain and simple, and it's all for you, our valued customers

LEARN MORE

The Products

Whether you're in search of an indica, sativa, hybrid or CBD dominant cannabis, we have them all. Whether you're in search of an indica, sativa, hybrid or CBD dominant cannabis. Whether you're in search of an indica, sativa, hybrid or CBD dominant t

SEE MORE

21. The principal business activity of Rochester Farms is the production and sale of marijuana products.

### A. The Rochester Farms PPP Loan

22. On June 29, 2020, Rochester Farms LLC was approved for a first-draw PPP loan of $191,600.00 through Cache Valley Bank (loan number 6002088004).

23. Rochester Farms listed 34 jobs on its application.

**COMPLAINT AND JURY DEMAND - 4**

**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

24.    Rochester Farms also listed an address of 10011 173rd Avenue Southwest, Rochester, WA 98579-9546.

25.    Rochester Farms classified itself under NAICS code 111998 (All Other Miscellaneous Crop Farming).

26.    On November 23, 2020, Rochester Farms applied for loan forgiveness. The SBA granted forgiveness of $192,281.00 on January 19, 2021.

27.    The SBA also paid Cache Valley Bank a lender processing fee of $9,580.00 in connection with the loan.

**B.    Defendant Knew or Recklessly Ignored Ineligibility**

28.    On information and belief Defendant provided information to applicants regarding SBA standards for eligibility for PPP loans on its website and in the application process.

29.    SBA provided information, including on the loan application itself, which would have led a reasonable person to check the standards for eligibility for PPP loans.

30.    Through this and other sources, Defendant(s) knew or should have known that the CARES Act barred receipt of PPP loans by a marijuana business.

31.    In the face of such notice and knowledge, failure to review and confirm eligibility for PPP loans was reckless and/or intentional as that term is defined under the false claims act.

**C.    Defendant's Loan Was Unlawful**

32.    Version one of the PPP Borrower Application Form, effective April 2, 2020, required the applicant to certify in good faith that, inter alia:

> The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

> The Applicant is not engaged in any activity that is illegal under federal, state or local law.

**COMPLAINT AND JURY DEMAND - 5**

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

33.    All other versions of the form contained the same or similar language.

34.    Rochester Farms must have made these certifications for it to receive PPP funding. Those certifications were false statements and were material when made.

35.    At all relevant times, Rochester Farms was a Direct Marijuana Businesses and/or Indirect Marijuana Businesses (collectively, Marijuana-Related Businesses), as defined by the SBA (see below), and, thus, was not eligible to receive a PPP loan.

36.    Effective April 1, 2019, the SBA issued SOP 50 10 5(K), which set forth requirements for lenders seeking to participate in SBA lending programs. This SOP "[i]ncorporated policy changes included in SBA Policy Notice 5000-17057 concerning the eligibility of marijuana-related businesses," which explained that business engaged in illegal activity—including "Applicants that make, sell, service, or distribute products or services used in connection with illegal activity, unless such use can be shown to be completely outside of the Applicant's intended market"—are ineligible for SBA loans.

37.    Specifically, Direct Marijuana Businesses, Indirect Marijuana Businesses, and certain Hemp-Related Businesses were ineligible for SBA loans because "federal law prohibits the distribution and sale of marijuana, financial transactions involving a marijuana-related business would generally involve funds derived from illegal activity. Therefore, businesses that derive revenue from marijuana-related activities or that support the end-use of marijuana may be ineligible for SBA financial assistance."

**COMPLAINT AND JURY DEMAND - 6**

**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969   steve@stellerlaw.com

38.    On August 2, 2019, the SBA issued Information Notice Control No. 6000-19005, Subject: Guidance on Grantees Providing Assistance to Marijuana-Related Businesses. Control No. 6000-19005 loosened restrictions on hemp-related businesses but retained exclusions on marijuana-related businesses:

> Because federal law prohibits the distribution and sale of marijuana, financial transactions involving a marijuana-related business would generally involve funds derived from illegal activity. Therefore, businesses that derive revenue from marijuana-related activities or that support the end-use of marijuana may be ineligible for SBA-funded technical assistance. The question of whether a particular business is eligible for assistance under an SBA program must be determined on an annual, case-by-case basis and depends upon the nature of the business' specific operations.
>
> A Direct Marijuana Business is a business that grows, produces, processes, distributes, or sells marijuana or marijuana products, edibles, or derivatives, regardless of the amount of such activity. This applies to recreational use and medical use even if the business is legal under local or state law where the applicant business is or will be located.
>
> An Indirect Marijuana Business is a firm that derived any of its gross revenue for the previous business year (or, if the firm is a start-up, projects to derive any of its gross revenue for the next business year) from sales to Direct Marijuana Businesses of products or services that could reasonably be determined to aid in the use, growth, distribution, enhancement or other development of marijuana. Examples of Indirect Marijuana Businesses include firms that... Sell smoking devices, pipes, bongs, inhalants, or other products primarily designed, intended, or marketed to facilitate marijuana consumption.
>
> . . .
>
> Finally, as to the issue of Cannabidiol (CBD) and products containing CBD, in practice CBD may be derived from either marijuana or hemp. When CBD is derived from marijuana, it is a Schedule 1 controlled substance under the Controlled Substances Act (21 U.S.C. § 801 et seq.). This means that firms, that develop or market CBD and CBD products derived from marijuana, would be considered Direct Marijuana Businesses as defined above and would thus not be eligible to participate in SBA technical assistance programs.

39.    Manufacture of marijuana and/or THC is in violation of 21 USC §801 et seq., the Controlled Substances Act.

40.    Defendant(s) manufacture THC by growing marijuana.

COMPLAINT AND JURY DEMAND - 7

**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

41.     At the beginning of the PPP program, the SBA further clarified that marijuana-related businesses would not be eligible for PPP funding. For example, on March 23, 2020, in response to a question "Are cannabis companies eligible?" for EIDL loans, the SBA tweeted from its @SBAPacificNW account: "With the exception of businesses that produce or sell hemp and hemp-derived products (Agriculture Improvement Act of 2018, Public Law 115-334), marijuana-related businesses are not eligible for SBA-funded services (OMB, 2 C.F.R. § 200.300)."

42.     In response to a follow-up question about the cited regulation, the SBA tweeted "[The regulation] says 'to ensure that federal funding is expended and associated programs are implemented in full accordance with U.S. statutory and public policy requirements.' In short, it's because marijuana is not federally legal & SBA is a federal agency."

43.     Interim Final Rule, 85 FR 20811, effective April 15, 2020 but first published by the SBA on April 2, 2020, stated "You are ineligible for a PPP loan if, for example... [y]ou are engaged in any activity that is illegal under Federal, state, or local law."

44.     The PPP loan application filed by Rochester Farms included false statements material to the receipt of the loan, and eventual forgiveness of the loan, including that it does not engage in illegal activity.

45.     The PPP loan application filed by Rochester Farms fraudulently induced the lender to provide the loan, which in turn caused the United States to pay processing fees identified above.

46.     Rochester Farms could have repaid the PPP funds at any time. Instead, it not only kept the PPP funds, but applied for and received forgiveness of those funds under false pretenses, damaging the United States in the amount of the loan plus interest.

47.     These actions were taken at the direction and under the supervision of Rochester Farms' owners and affiliated companies.

**COMPLAINT AND JURY DEMAND - 8**

**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969   steve@stellerlaw.com

## COUNT I
### VIOLATIONS OF 31 U.S.C. § 3729–FEDERAL FCA

48.     Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

49.     As set forth above, Defendant(s) knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

50.     As set forth above, Defendant(s) knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

51.     As set forth above, Defendant(s) knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

52.     Due to Defendant(s)' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

53.     Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

### PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendant(s):

On behalf of the United States:

a)  awarding the United States treble damages sustained by it for each of the false claims or improperly retained payments;

b)  awarding the United States a maximum civil penalty for each of the false claims, records, or statements;

**COMPLAINT AND JURY DEMAND - 9**

**Teller Law**
300 Lenora Street, #1471
Seattle, WA  98121
(206) 324-8969  steve@stellerlaw.com

c) awarding Relator the maximum share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

d) awarding Relator litigation costs, expenses, and reasonable attorneys' fees; and

e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

DATED this 8th day of October, 2025.

Stephen A. Teller, WSBA #23372
Attorney for Relator Daniel Foster

**COMPLAINT AND JURY DEMAND - 10**